IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAULA P., <br><br> Claimant, <br><br> v. <br><br> MARTIN O'MALLEY, <br> Commissioner of Social Security, <br><br> Respondent. | No. 21 C 4241 <br><br> Magistrate Judge Jeffrey T. Gilbert |

**MEMORANDUM OPINION AND ORDER**

Paula P.[1] ("Claimant") appeals the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying her application for disability insurance benefits. For the reasons set forth below, Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 11] is denied, and the Commissioner's Memorandum in Support of Motion for Summary Judgment [ECF. No. 15] is granted.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Martin O'Malley became the Commissioner of the Social Security Administration on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## BACKGROUND

On January 6, 2020, following a remand by this Court and the Appeals Council, the Administrative Law Judge ("ALJ") denied plaintiff's application for benefits. (R.2431-2460.) The Appeals Council declined review (R.2412-2419), leaving the ALJ's decision as the final decision of the Acting Commissioner of Social Security reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## DISCUSSION

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "[s]ubstantial evidence," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which she claims disability; (2) the

claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform her past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001).

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since August 30, 2014, the amended alleged onset date of her disability through December 31, 2017, her date last insured ("DLI"). (R.2434). At step two, the ALJ found that Claimant had the severe impairments of "degenerative joint disease of the knees, with status post, right knee replacement", migraines/headaches, fibromyalgia, degenerative disc disease of the lumbar spine, obesity, bipolar disorder, and generalized anxiety disorder. (*Id.*) At step three, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals a listed impairment. (R.2435-2440). At step four, the ALJ found that Claimant is unable to perform any past relevant work but has the RFC to "perform sedentary work" with certain exceptions. (R.2440-2459). At step five, the ALJ found that jobs exist in significant numbers in the national economy that Claimant can perform, and thus she is not disabled. (R.2459-2460).

Claimant asserts four arguments challenging the ALJ's decision, including three challenges related to the mental RFC - (1) the ALJ failed to consider the combined effects of all of Claimant's impairments, including her chronic pain, in the mental RFC; (2) the ALJ misconstrued the waxing and waning of Claimant's mental

3

impairment symptoms in crafting the RFC; (3) the ALJ did not account for Claimant's obesity in crafting the mental RFC - and an additional argument that (4) the ALJ failed to properly assess the medical opinion evidence from Claimant's mental health treaters. Claimant's Motion [ECF No. 11] at 8-16.[3]

### A. The ALJ's Assessment of Claimant's Mental RFC

The Court first addresses Claimant's arguments regarding the mental RFC. Claimant says the ALJ failed to consider how her "mental impairment, combined with multiple severe physical impairments . . . that result in fatigue and widespread, chronic pain, impact her ability to stay on task sufficiently to sustain non-exertional work-related activities, five days per week, eight hours per day." Claimant's Motion [ECF No. 11] at 10-11. Claimant argues the ALJ, "glossing over the fact that the opinion of Dr. Weigand, Plaintiff's treating psychologist, properly factored in the effects of [Claimant's] chronic pain, . . . assigned great weight to the non-examining psychologist consultant's" opinion (Dr. Andert) notwithstanding that he "acknowledged he was not qualified to assess the extent to which chronic pain would diminish that capacity." [*Id.*]

As an initial matter, the Court disagrees that the ALJ glossed over Dr. Weigand's opinion. To the contrary, the ALJ provided a detailed analysis of Dr. Weigand's opinion, including regarding the combined effect of Claimant's pain and mental impairments. (R.2453-2454). The ALJ discounted Dr. Weigand's opinion about Claimant's "'diminished' capacity to concentrate" when Claimant "is depressed

---

[3] Claimant does not challenge the ALJ's assessment of physical limitations in the RFC. Claimant's Motion [ECF No. 11] at 3 n.2.

4

and/or in pain" and her inability to "function in a competitive work setting" for various reasons, including because Dr. Weigand "did not administer any tests and her examinations . . . .mostly had shown normal mental status findings, except for her initial evaluation," her opinion was "rendered . . . when the claimant had reported some exacerbation of symptoms" but her symptoms subsequently improved "after she had rendered her opinion form," and "nothing in her treatment notes . . . indicated marked limitations for duration in concentrating, persisting, or maintaining pace, or that claimant could not sustain other, unskilled work." (R.2454). The ALJ also found Dr. Weigand's "opinions are too general to be given significant weight" because "she does not specify how 'limited' the claimant and her productivity were" and, other than checking a box that Claimant could not sustain an eight-hour workday, Dr. Weigand "does not specify why" that would be so. (R.2454). In addition, the ALJ noted that Dr. Weigand's opinion factored in Claimant's mobility limitations, although that "is not her area of expertise," and "Dr. Weigand is not qualified to opine on physical issues." (R.2454). Based on the ALJ's analysis of Dr. Weigand's "checklist" opinion and treatment notes, the ALJ concluded "[o]verall, Dr. Weigand's opinions do not merit controlling weight or great weight." (R.2454). The ALJ, however, was "partly persuaded" by Dr. Weigand's opinion and therefore "adopted and accounted for the limitations reasonably indicated by Dr. Weigand's reports and notes, including unskilled work with no production pace. . .". (R.2454). Claimant does not address any of these aspects of the ALJ's analysis of Dr. Weigand's opinion and for this reason,

5

fails to provide any basis for this Court to second guess the ALJ's opinion regarding Dr. Weigand.

Moreover, the ALJ did not err in crediting the opinion of Dr. Andert regarding how Claimant's mental impairments limited her ability to sustain full time work merely because Dr. Andert did not also offer an opinion regarding whether Claimant's pain further limited her ability to work. Instead, the ALJ considered the overall evidence regarding Claimant's pain, repeatedly stating she considered Claimant's pain in combination with her mental impairments. (*See*, *e.g.*, R.2439 ("considering chronic depression and some anxiety, enmeshed with chronic pain" to find "claimant had a moderate limitation in concentrating, persisting, or maintaining pace"), R.2453 (finding Claimant's "depression, anxiety, and pain, in combination, caused symptoms of depressed mood, anxiety, irritability and other symptoms" caused "moderate limitations" in understanding, remembering, or applying information, in concentrating, persisting, or maintaining pace, and in adapting and managing)).

Claimant points to the opinions of other treating physicians regarding the extent to which Claimant's pain would impact her ability to maintain consistent work, including the pain opinion of Dr. Katta, results of a neuropsychological evaluation by Dr. Weintraub, and the assessment of Stacy Pillier, an APN who was a long-term care provider. Claimant's Motion [ECF No. 11] at 11. While the Court understands Claimant to suggest the ALJ failed to consider these opinions and treatment records regarding Claimant's chronic pain, the Court disagrees. The ALJ specifically explained why she did not credit the opinions and records from each of

6

these treaters. (R.2447 (discussing Dr. Kehoe's 2019 report at Exhibit 42F which described an August 2016 neuropsychological evaluation report by Dr. Weintraub as having merely "suggested mild weakness in sustained attention")[4]; R.2454-55 (finding Dr. Katta's opinion that due to Claimant's pain she would be unable to function in a competitive work setting to be "rather perfunctory" and "not well supported by objective findings in the record for duration," noting Dr. Katta opined by "checklists," his treatment exposure to Claimant was somewhat limited, and there were instances in the records where Claimant's pain was controlled, she sought employment, and was able to move heavy items, and ultimately "assigning little weight" to Dr. Katta's opinions because "there are no objective findings in the treatment records to support a markedly limiting pain syndrome"; further noting Dr. Katta "is not a specialist for mental impairments"); R.2457 (Stacy Pillier, who the ALJ noted was "not a physician," "speculated" about how long claimant's symptoms had lasted, "does not explain these extreme limitations with persuasive narration and supportive diagnostic or clinical findings," and ultimately found "her opinions neither informed nor persuasive" and "gave them no weight").

---

[4] In addition, Dr. Andert, the consulting psychologist who testified at the hearing and whose opinions regarding Claimant's mental functioning mostly persuaded the ALJ (R.2438), testified that Dr. Weintraub's August 2016 evaluation was not contained in the record and references to that evaluation in Dr. Kehoe's report reflected that "despite the claimant's complaints of cognitive decline, only mild weakness was found in sustaining attention and memory and those mild deficits were felt to be due to multiple sources including the claimant's psychiatric condition, the effects of her psychotropic medications, pain . . ." (R.2496). For these reasons, Dr. Andert concluded there was not support in the record "for separate impairment in the category of a neurocognitive disorder." (R.2496).

7

For these reasons, the ALJ did not fail to consider the limitations of Claimant's pain in combination with her mental health impairment. The ALJ expressly considered each of the treater opinions regarding the extent of limitations imposed by Claimant's pain and explained why the ALJ discounted or did not find those opinions persuasive. *See also* Commissioner's Motion [ECF No. 15] at 10-11 (describing ALJ's analysis of treater opinions). Claimant does not address the ALJ's analysis regarding these pain-related opinions and records. Claimant's Motion [ECF No. 11] at 13.

Moreover, although Claimant at first suggests the ALJ did not consider the combined limitations imposed by Claimant's pain and mental impairments, Claimant later acknowledges the ALJ did address the combined effects of these impairments but argues that the ALJ did not "properly assess" that evidence. Claimant's Motion [ECF No. 11] at 13 ("Merely saying she 'considered'" the "effects of Plaintiff's chronic pain" does not "mean that she properly assessed it"); Commissioner's Motion [ECF No. 15] at 10. Claimant essentially is asking this Court to re-weigh the opinion evidence and give greater weight to Dr. Weigand's opinion and the opinions of the other treaters addressing Claimant's pain than did the ALJ. That, however, is not the Court's role. *See Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020) (reviewing courts do not reweigh evidence); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (a court may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment" for the ALJ's) (citation and brackets omitted). For all these

8

reasons, remand is not required based on the ALJ's consideration of the combined effects of Claimant's pain and mental impairments.

Claimant also says the ALJ improperly focused on the waxing and waning of Claimant's more severe mental health symptoms in crafting an RFC that contemplated Claimant's ability to engage in full time work on a regular and continuing basis. [ECF No. 11] at 10-11, 13 (citing *Bauer v. Astrue*, 532 F.3d 606, 607 (7th Cir. 2008)). Claimant says the ALJ "repeatedly misconstrued a natural waxing and waning of chronic symptoms to suggest that Plaintiff's limitations did not satisfy some ill-defined 'durational' requirement" and for this reason, the RFC is not supported by substantial evidence. Motion [ECF No. 11] at 8. Claimant also contends the ALJ failed to adequately explain how the mental limitations included in the RFC accounted for Claimant's mental impairments. [*Id.*] at 13-14.

The ALJ's opinion describes a timeline of mental health treatment that reflects repeated peaks and valleys in Claimant's mental health symptoms. (R.2445-2449). The ALJ acknowledged Claimant's mental health impairments caused waxing and waning symptoms, but concluded her symptoms are mostly stable. (*See, e.g.*, R.2438 (it was "an accurate conclusion" that Claimant had "waxing and waning mental symptoms" and rejecting the conclusions of psychological consultants previously rendered in 2018 that Claimant's mental impairments were non-severe); R.2439 (with regards to "concentrating, persisting, or maintaining pace" that "claimant has omngoing (*sic*) psychotherapy and medical treatment for bipolar disorder" and "[t]he impairments seemed stable but prone to exacerbation due to stress"); R.2440 ("Due

9

to stress-induced mental health symptom exacerbations, treatment records do document some waxing and waning of symptoms, but again, findings are mostly within normal limits" noting Claimant was "never hospitalized for symptom exacerbation after 2014, except for an evaluation for partial hospitalization" yet Claimant "has continued to report symptoms that affect her behavior, and in addition, has continued to be prescribed multiple medications")).

Based on a thorough review of the record, the ALJ concluded Claimant "has severe psychological issues, but those do not seem to be markedly symptomatic for duration, but rather her symptoms wax and wane" and concluded "the evidence as a whole supports a sedentary, unskilled" RFC. (R.2451). The ALJ found Claimant's statements about the intensity, persistence, and limiting effects of her symptoms were "inconsistent" noting "[t]he majority of examinations in the record demonstrate there was an absence of ongoing and significantly abnormal physical or mental status." (*Id.*). The ALJ also stated she rejected screening tests and scores used by Claimant's treating psychiatrists because they provide "a snapshot of functioning at the time of the examination and do not reflect any specific functional limitations." (R.2458). The ALJ concluded "[a]t the times she sought treatment, [Claimant] had experienced some exacerbations of pain, depressed mood, and anxiety" but "she had received appropriate treatment, which had stabilized her symptoms, not completely, but sufficiently to work." (*Id.*) In sum, the ALJ concluded that Claimant's mental health impairments did not preclude her from working full time notwithstanding that she experienced some periods of exacerbated symptoms.

10

The Court finds the ALJ built a logical bridge between her assessment of the record evidence as to Claimant's mental limitations and the accommodations in the RFC. The ALJ's RFC, limited Claimant to "simple, routine and repetitive tasks with occasional changes in the work setting and occasional decision making," "[n]o fast paced production work or pace work," "[o]ccasional interaction with the public of a brief and superficial nature" and "[o]ccasional supervision, and occasional interaction with coworkers, but no tandem tasks," (R.2440). Claimant cites case law for the proposition that "limiting a person's interactions with others does not necessarily capture her temperamental deficiencies" and asserts that ALJ "failed to explain how she arrived at the seemingly arbitrary findings of 'occasional'" in the RFC, but Claimant does not articulate what additional limitations in interacting with others beyond what the ALJ included in the RFC would be necessary given Claimant's specific symptoms. (*See* R.2453 (Claimant's "moderate limitation" in accepting supervision without behavioral extremes" and "in working others (sic) and with the public" limit Claimant to "no more than occasional interaction with the public of a brief and superficial nature, and only occasional supervision, and occasional interaction with coworkers, but no tandem tasks")).

In criticizing the RFC as failing to account for Claimant's concentration limitations, Claimant points to Dr. Ferraresi's opinion that Claimant would "likely be off-task more than 30 per cent of the work day and absent more than six days per month," that she would be unable to maintain concentration "for at least 15 per cent of a workday," and would be unable to understand instructions "for at least ten

11

percent of a workday." Claimant's Motion [ECF No. 11] at 14. Claimant, however, does not address the ALJ's analysis and explanation for why she found Dr. Ferraresi's opinion "lacks overall reliability." (R.2456 (noting Dr. Ferraresi was not a medical doctor qualified to offer opinions regarding Claimant's pain; that Dr. Ferraresi had only seen Claimant twice in a month before submitting the mental capacity questionnaire and that Dr. Ferraresi's assessment "lacked overall reliability" because she began treating Claimant in March 2016 but asserted symptoms had existed since December 2013, which "surely is based on the claimant's reports"); *see also* R.2439 (noting "checklists" from treating therapists "indicating the possibility of marked limitation, or off task behavior, due to concentration deficits" were "not well supported")). The ALJ adequately explained why she discounted Dr. Ferraresi and other treater opinions regarding off task behavior and explained why she included the mental limitations related to moderate concentration deficits in the RFC. (*See* R.2453 (Claimant's "moderate" difficulties in understanding, remembering, and carrying out complex and detailed instructions, in maintaining concentration for extended periods, in performing at a consistent pace and making decisions and adapting to changes at work "precludes more than simple work instructions" and limits Claimant to "performing work that consists of simple, routine and repetitive tasks in a work environment free of fast-paced production rate or pace work, involving occasional work setting changes, and occasional decision making")).

In addition, the ALJ explains that while Claimant's symptoms "wax and wane," Claimant's statements about "the intensity, persistence, and limiting effects

12

of her symptoms" were "inconsistent," there was a "lack of supportive objective fundings to show disabling functional limitations" from her mental health symptoms, and "the majority of examinations in the record demonstrate . . . the absence of markedly abnormal mental status." (R.2451). For these reasons, the ALJ concluded Claimant "had not carried her burden to show by a preponderance that her . . . mental health symptoms are more limiting than the residual functional capacity assessment. . ." (R.2451).

Mindful of the deference owed to the ALJ's decision on appeal, this Court cannot, and will not, substitute its judgment for that of the ALJ's by reweighing the evidence in the way Claimant asks it to do. The Court declines to interpret Seventh Circuit case law, including *Bauer*, "as foreclosing a finding that a claimant can work if the claimant exhibits symptoms of depression or anxiety that 'wax and wane'," *See Vanhphenh S. v. Saul*, 2021 WL 1315633, at *8 (N.D. Ill. Apr. 8, 2021) (Gilbert, J.). Claimant does little to explain how the general principle articulated in *Bauer* – namely, that it is often the nature of chronic disease and mental illness that there will be better days and worse days – should cause the Court to conclude the ALJ erred in assessing Claimant's particular limitations. Instead, Claimant describes the symptoms she says preclude her from working without explaining how they affect her ability to perform jobs consistent with the RFC. "It is not enough to criticize the ALJ's decision about her functional capacity to work. She must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *See Morales v. O'Malley*, 2024 WL 2794055, at *1 (7th Cir. May 31, 2024).

13

Claimant does not identify evidence supporting why she is precluded from full time work during her periods of "waxing" symptoms. Instead, Claimant asserts the ALJ committed error because she relied on the opinion of Dr. Andert, the consulting psychologist who testified at the hearing, notwithstanding that Dr. Andert did not opine about the effect of pain on Claimant's ability to work. [ECF No. 11] at 10; *see also* (R.2438-2439; R.2453). Dr. Andert did, however, testify there could be "some variability" as to Claimant's ability to manage her emotions and irritability and attend work on a full time basis, but stated that he did not see evidence in the record to suggest that Claimant's mental health conditions would cause "significant difficulty with attendance" noting Claimant "has been highly compliant with healthcare treatments." (R.2502-2503). Although Claimant notes Dr. Andert's conclusion in this regard, [ECF No. 11] at 6, she does not explain why Claimant's ability to consistently comply with her medical treatment even during periods of exacerbated mental health symptoms does not offer support for the ALJ's conclusion that Claimant can maintain full time work. *See Amanda L. S. v. Kijakazi*, 2023 WL 2711663, at *5 (N.D. Ill. Mar. 30, 2023) ("the ALJ was entitled to consider the objective medical evidence as well as [claimant's] treatment history, presentation at appointments, medication effectiveness, and daily activities in assessing her statements regarding the extent of her symptoms and functioning.") (citing 20 C.F.R. § 416.939(c)(2), (3)).

On review, the Court may not "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v.*

14

*Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). In the Court's view, the ALJ considered Claimant's fluctuating mental health symptoms, and substantial evidence supports the ALJ's decision that these symptoms did not preclude Claimant from all competitive work within the scope of the RFC. There was sufficient analysis for the Court to infer the ALJ concluded that Claimant's fluctuating symptoms would not result in significant time away from work or that she would be off task. *Amanda L. S.*, 2023 WL 2711663, at *5 ("the ALJ did not ignore that [claimant's] mental health symptoms waxed and waned. Instead, the ALJ considered [claimant's] manic episodes, need for hospitalization, and positive findings on examination at times and credited her to a degree by determining that she had severe mental impairments and needed numerous restrictions to work"). On this record, it is not enough for Claimant to argue the ALJ could or should have come to a different conclusion. The conclusion the ALJ came to is explained sufficiently for the Court to follow it and supported by substantial evidence.

Claimant's final argument with regards to the mental RFC is that the ALJ "glossed over the effects of" Claimant's obesity. Claimant's Motion [ECF No. 11] at 14. Claimant acknowledges the ALJ "attributed certain exertional and postural limitations to obesity" in the RFC, [*id.*], and the ALJ states she "considered the effect of the claimant's obesity, in combination with other impairments, on workplace function." (R.2437). Nevertheless, Claimant says the ALJ failed to consider the impact of Claimant's obesity on her "ability to sustain mental functioning throughout a workday" and notes the record reflects "fatigue is a persistent problem" for her.

15

Claimant's Motion [ECF No. 11] at 14. While Claimant asserts "[t]he SSA recognizes that in cases involving obesity, fatigue may affect the person's physical *and* mental ability to sustain work activity," [*id.*], Claimant fails to explain how obesity-related fatigue, or other obesity related symptoms, impacted her mental workplace functions. *See* Commissioner's Motion [ECF No. 15] at 12-13. *See, e.g.*, *Brumbaugh v. Saul*, 850 F. App'x 973, 976 (7th Cir. 2021) (rejecting argument that ALJ failed to account for obesity in RFC where claimant's "assertion that her obesity causes functional limitations is merely speculative" and "medical records do not show that she suffers from any obesity-induced limitations"); *Brandi B. v. O'Malley*, 2024 WL 1858452, at *9 (N.D. Ill. Apr. 26, 2024) ("If there are other restrictions supported by the medical evidence, it was up to the plaintiff to specify those and support them with medical evidence, rather than simply assert things like these generalities: "people with obesity may have limitations" or "fatigue may affect the person's physical and mental ability.") (internal citations omitted). Claimant does not explain why the mental limitations included in the RFC are insufficient to address any mental impairment symptoms that are exacerbated by obesity. Accordingly, the Court finds the ALJ properly considered Claimant's obesity in crafting the RFC.

Claimant's final argument is that the ALJ "failed to properly assess the medical opinion evidence." Claimant's Motion [ECF No. 11] at 15. Claimant says the ALJ did not properly apply the treating physician rule because the ALJ credited the opinions of non-treating consultants rather than deferring to the opinions of treating specialists. [*Id.*] Under the treating physician rule, which applies to this case filed

16

before 2017, "the opinions of treating physicians are entitled to controlling weight if they are supported by medical evidence and consistent with the record. Conversely, 'if the treating physician's opinion is inconsistent with the consulting physician's opinion, internally inconsistent, or based solely on the patient's subjective complaints, the ALJ may discount it.'" *See Baptist v. Kijakazi*, 74 F.4th 437, 444 (7th Cir. 2023), *reh'g denied*, 2023 WL 6294252 (7th Cir. Sept. 27, 2023) (citing and quoting 20 C.F.R. § 404.1527(c)(2); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 776 (7th Cir. 2022); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008)).

The Court finds the ALJ complied with regulations in assessing and discounting the treater's opinions. Claimant primarily focuses on the ALJ's assessment of Dr. Weigand's opinion, asserting that the ALJ "rejected the opinion of Dr. Weigand because she had only treated [Claimant] for six months." [*Id.*] As discussed above, however, the ALJ articulated many other reasons for finding Dr. Weigand's opinion to be only "partly persuasive" that Claimant fails to address, including, as the Commissioner notes, factors properly considered under the applicable regulations. Commissioner's Motion [ECF No. 15] at 8 (citing 20 C.F.R. § 404.1527(c)(2), (c)(4), & (c)(5)).

Claimant also points out the ALJ did not acknowledge that Dr. Weigand's treatment notes for the week after Claimant's reported improvement in symptoms stated that she "has been 'crazy' this week and drank a whole bottle of wine." (R.3361-3362). *See* Claimant's Motion [ECF No. 11] at 3, 15. However, "an ALJ need not mention every piece of evidence, so long as [she] builds a logical bridge from the

17

evidence to [her] conclusion." *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Getch v. Astrue*, 539 F.3d 473, 480 (7th Cir. 2008)). The ALJ expressly considered Dr. Weigand's treatment notes and found "nothing . . . indicated marked limitations for duration in concentrating, persisting, or maintaining pace, or that the claimant could not sustain other, unskilled work." (R.2454). While Claimant points to this one additional report of heightened symptoms from Dr. Weigand's treatment notes, Claimant does not explain why it is inconsistent with the ALJ's overall assessment of Dr. Weigand's opinion. Thus, the ALJ's stated reasons "provide sufficient support" for discounting the opinion of Dr. Weigand. *See Baptist*, 74 F.4th at 445; *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) ("An ALJ may discount a treating physician's medical opinion ... as long as he 'minimally articulate[s] his reasons for crediting or rejecting evidence of disability.'").[5]

## CONCLUSION

For the reasons set forth above, Claimant's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 11] is denied, and the Commissioner's Memorandum in Support of Motion for Summary Judgment [ECF No. 15] is granted.

It is so ordered.

---

[5] Claimant otherwise asserts the ALJ "went on to reject similar dire opinions from other treating mental health professions, mostly by vaguely asserting their findings were unsupported" and then in a few sentences, simply describes parts of those treater's notes. Claimant's Motion [ECF No. 11] at 15. This cursory statement fails to identify or address any deficiencies in the ALJ's analysis of those treater's opinions. In addition, the Court finds the ALJ provided reasonably supported justifications for discounting or rejecting the opinions of Claimant's various treaters. (R.2453-2456).

_____
Jeffrey T. Gilbert
United States Magistrate Judge


Dated: June 10, 2024